Bernard Tomson, J.
At the inception of the trial of this indictment, the court swore a panel of 72 prospective jurors on January 21,1975 at 10:45 a.m. At 11:38 a.m., 24 additional prospective jurors were 'sworn. In that morning session, the panel was informed as to the nature of the indictment, a number of jurors were excused on consent, the 'balance were instructed as to their conduct during the trial and excused until 2:00 p.m.
At 2:00 p.m., the defendant challenged the array of jurors stating: “ that the jury is not a cross section of this community, in that pursuant to New York State Statute a female, by reason of the fact that she is a female, is automatically excluded from jury service. As a result this panel consists of less than twenty *167 per cent females and that is not representative óf this community. The defendant has a constitutional right to be tried by a jury of his peers that represents ,a cross section of the community. This particular. jury does not represent that cross section. In addition I would move to dismiss the indictment on the same grounds, since the statute, which is the basis for the formulation of the Grand Jury, ¡also excludes females.”
On January 22, 1975, the defendant renewed his motion:
“ mb., pollina : I would like to at this time renew my motion challenging the array of jurors based upon the absence of females from the array of jurors. This morning—
“the court: What do you mean by the absence of female jurors ? Certainly even a casual glance at the panel would indicate that there were female jurors and there are some prospective female jurors in the box now.
“mb. pollina : That is correct, your Honor. What I am talking about is the array of jurors, the panel from which they are selected. I renew this motion only in light of a decision that came down while I was making that motion yesterday by the United States Supreme Court, the Louisiana case which is the subject of an article in this morning’s Law Journal, and that is my reason for making the motion this day. I would ask the Court to reconsider its denial of the motion based upon the Supreme Court’s decision in the case of the name ,of which is not recited. However, the fact that it does exist and stems from the State of Louisiana. The case appears to be on all fours with the facts presented in this case.”
Subdivision 2 of CPL 270.10 provides in part: “ A challenge to the panel must be made before the selection of the jury commences, and, if it is not, such challenge is deemed to have been waived. Such challenge must be made in writing setting forth the facts constituting the ground of challenge.”
The challenge was therefore not timely made, and “ is deemed to have been waived ’ ’.
A description of the jury selection procedures in Nassau County and the -applicable law.may be useful.[1]
*169 (See, also, People v. Anderson, 45 A D 2d 561; People v, Marr, 67 Mis 2d 113 and People v. Theodore G., a decision of Judge Vitale in this court in Indictment No. 29838, dated Nov. 3, 1971, and the cases therein cited.)
Subdivision 7 of section 665 of the Judiciary Law provides:
“ Each of the following persons only, any inconsistent provision ¡of law to the contrary notwithstanding, although qualified, is entitled to exemption from service as a juror upon claiming exemption therefrom: * * *
7. A woman.”
Section 666 of the Judiciary Law provides: “ The right to exemption must foe claimed at the time of examination for liability to serve as a juror.. If a person fails to present such claim at such time, he shall be deemed to have waived the same and cannot be exempted thereafter except for reasons accruing after the time of examination.” (Emphasis supplied.)
In Taylor v. Louisiana (419 U. S. 522, 525), the Supreme Court reversed appellant’s conviction on the ground that the “Louisiana jury selection system deprived appellant of his Sixth and Fourteenth Amendment right to an impartial jury trial.” (See, also, Daniel v. Louisiana, 420 U.S. 31, and Stubblefield v. Tennessee, 420 U. S. 903, denying retro-activity to Taylor.) Under Louisiana law, a woman was ineligible for jury duty unless she first filed with the clerk a written declaration of her desire to be selected for jury duty. The result was that stated in Taylor (p. 524): “The Twenty-second Judicial District is comprised of the parishes of St. Tammany and Washington. The appellee has stipulated that 53% of the persons eligible for jury service in these parishes were female, and that no. more than 10% of the persons on the jury .wheel in St. Tammany Parish were women. During •the period from December 8, 1971, to November 3, 1972, 12 females were among the 1,800 persons drawn to fill petit jury venires in St. Tammany parish. It was also stipulated that the discrepancy between females eligible for jury service and those actually included in the venire was the result of the operation of La. Const., Art. VTI, § 41, and La. Ciode Grim. Proc. Art. 402. In the present case, a venire totaling 175 persons was drawn for jury service beginning April 13,1972. There were no females on the venire.”
Nassau County’s procedure differs significantly from the proscribed procedure followed, in Louisiana. It is important to note that whereas a woman in Louisiana was required to take affirmative actioii to be considered as a juror, in Nassau County she would be required to serve unless she claimed exemption. Her *170 failure so to do would result in waiver of the exemption. (Judiciary Law, § 666.)
In the insitant ease, a panel of 120 prospective juror® called included 24 women (20%).
“ It should also be emphasized that in holding that petit juries must be drawn from ,a source fairly representative .of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any .partieuar composition, Fay v. New York. 332 U. S. 261, 284 (1947); Apodaca v. Oregon, 406 U. S., at 413 (plurality opinion); but the jury .wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof. ” (Taylor v. Louisiana, p.-)
It is apparent that Nassau County’s procedure in selecting prospective jurors complies with mandates of the Sixth and Fourteenth Amendments of the United States Constitution.[2] (See, also, Stubblefield v. Tennessee, supra.)
The defendant’s motion is in all respects denied.

. The procedure' in Nassau County for selecting prospective jurors was discussed in People v. Jones, Nassau County Court (Tomson, J.), April 16,1974:
THE Court: This is a challenge to the jury panel pursuant to CPL 270.10 which states that such a challenge may be made only by the defendant and only on the ground that there has been a departure from the requirements of the Judiciary Law in the drawing or retqrn of the panel as to result in substantial prejudice to the defendant.
At the hearing the Commissioner of Jurors, Joseph Dowler, testified as to the procedure followed in this county. He stated that qualifying summonses *168 are sent to those listed in the voters’ registry, the assessment rolls, the Nassau County telephone book, motor vehicle owners’ lists, volunteers and to subscribers to the lighting company or companies in those two villages that have their own lighting companies.
When the qualifying summons • addressee appears at the Commissioner of Jurors’ office, he then fills out defendant’s Exhibit B for Identification. Defendant’s exhibit B is the formal questionnaire shown in section 661 of the Judiciary Law with no significant changes.
The choice of names is done by random sampling. Every 3d, 5th, 7th or 15th name is determined to be chosen, and that procedure is followed by clerks operating under the direction of the Commissioner of Jurors. When the answers are filled out on the questionnaire, a determination is made as to whether the prospective juror meets with the qualifications found in article 18 of the Judiciary Law. Those qualifications are found on the reverse side of defendant’s Exhibit A for identification.
The other criteria found on the reverse side of defendant’s Exhibit A as to disqualified jurors, exemptions, and the like, are all taken from the Judiciary Law.
There obviously can be no complaint made with respect to the method described. That leaves only the practice. So far as the practice is concerned, the Commissioner of Jurors testified, and his testimony was in no way attacked, overborne or challenged. The practice of choosing every third, fifth, seventh or other numerical sequence of names, which he described as random sampling, would rule out on the face of it any discrimination.
If we look under “ Qualifications of Jurors ”, the opportunity for practicing intentional discrimination is not to be found in:
1. A citizen of the United States.
That is an arbitrary designation where no discrimination can be exercised.
2. A resident of Nassau County.
That applies in the same way.
3. Between the ages of 21 and 72. (Now between the ages of 18 and 75.)
That’s a statutory requirement, and there is no discretion on the part of the commissioner required.
4. Physically and mentally fit.
That is one of the areas where perhaps discrimination as a matter of practice may be found.
5. Of good character and approved integrity and sound judgment is another area where discrimination may be exercised in a discriminatory fashion.
6. Able to read and write the English language understandably is another area where perhaps there may be discretion improperly used to exclude jurors.
Nothing in the testimony of Mr. Dowler would indicate that those categories are misused. On the contrary, the witness’ testimony was to the effect that a Very small percentage of jurors who appear for qualification are disqualified, and then primarily because of conditions relating to their health.
By no stretch of the imagination can there be reached the conclusion that is required to be met by People v. Chestnut (26 N Y 2d 481, 488) in order to grant the defendant’s application.
I would be required to find here that there was an “ intentional and systematic discrimination ” practiced by the Commissioner of Jurors. I not only find that such a burden was not met, but that there is no testimony that there was any intentional or systematic discrimination with respect to the prospective jurors. So that I am required, and I do deny the challenge.

. The court takes this opportunity to suggest that the Legislature amend subdivision 7 of section 665 of the Judiciary Law by eliminating the exemption for a woman and replacing it with an exemption for a person (male or female) who has legal custody of a child under such a specified age as the Legislature deems appropriate. (Cf. U. S. Code, tit. 28, §§ 1862, 1863; see, also, Marshall v. Gamm,- U. S.-, cert. den. Jan. 27, 1975.)